# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   **v.**                                        **Case No. 09-CR-108**

**CARY NELSON**
        **Defendant.**

## DECISION AND ORDER

On April 21, 2009, the government charged defendant Cary Nelson with possessing unregistered firearms, contrary to 26 U.S.C. § 5861(d). The charges arose out of the government's discovery that defendant in assembling two firearms (a pistol and a rifle) intentionally omitted the "disconnector" springs from the trigger group, thus permitting the guns to fire automatically. Defendant's conduct came to light when he took the firearms to a gun store for calibration; while test firing the guns a store employee found that they functioned as fully automatic machine guns. The employee contacted the ATF, which seized the guns, tested them, and confirmed that they fired automatically. Because these two firearms qualified as "machine guns" under federal law, they needed to be registered in the National Firearms Registration and Transfer Record, but neither was.

On March 23, 2010, defendant pleaded guilty, and at his June 23, 2010 sentencing hearing I calculated an advisory sentencing guideline range of 24-30 months' imprisonment. However, on consideration of the factors set forth in 18 U.S.C. § 3553(a), I imposed a sentence of five years' probation with conditions including six months of home confinement and fifty hours of community service. In imposing this non-guideline sentence, I noted that defendant

committed the offense due to his interest in guns, not in order to sell the weapons or use them in any unlawful fashion; that this case represented his first ever contact with the criminal justice system, and he had otherwise acted pro-socially; and that a prison sentence would have a devastating impact on his family.

On July 30, 2012, the probation office petitioned the court for early discharge of defendant's supervision. I directed the government to respond, then permitted defendant to reply. On review of the submissions, and the entire record, I now grant the request for early termination.

**I.**

Under 18 U.S.C. § 3564(c),

> The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation previously ordered and discharge the defendant at any time in the case of a misdemeanor or an infraction or at any time after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

The statute thus permits early termination of felony probation if: (1) the defendant has served at least one year of supervision; (2) the government is given notice and an opportunity to be heard; and (3) termination is in the interest of justice based on the defendant's conduct and the pertinent sentencing factors under 18 U.S.C. § 3553(a). See United States v. Medina, 17 F. Supp. 2d 245, 245-46 (S.D.N.Y. 1998) (discussing similar standards for early termination of supervised release). The defendant bears the burden of demonstrating that early termination of supervision is justified. See United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006) (citing United States v. Weintraub, 371 F. Supp. 2d 164, 167 (D. Conn. 2005); United States v. McKay, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005)).

## II.

In the present case, defendant has served over two years, and the government has been noticed and heard. The issue is thus whether the interest of justice warrants early termination.

Courts have held that the conduct of the defendant necessary to support early termination under this statute should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination. Instead, termination is generally granted only in cases with new or unforeseen circumstances, which may include exceptionally good behavior. E.g., United States v. Singer, No. 08-CR-587, 2012 WL 3062136, at *1 (E.D.N.Y. July 25, 2012); United States v. Echoles, No. 09-CR-140, 2010 WL 2985649, at *2 (E.D. Wis. July 26, 2010); United States v. Caruso, 241 F. Supp. 2d 466, 468-69 (D.N.J. 2003); see also United States v. Kay, 283 Fed. Appx. 944, 946 (3d Cir. 2008) (applying this standard to motion for early termination of supervised release); United States v. Lussier, 104 F.3d 32, 36 (2d Cir. 1997) (same); Folks v. United States, 733 F. Supp. 2d 649, 651-52 (M.D.N.C. 2010) (same).

In making sentencing determinations, § 3553(a) directs the district court to consider the nature and circumstances of the offense, and the history and characteristics of the defendant; the need for the sentence imposed to provide just punishment, deterrence, public protection, and rehabilitation of the defendant; the avoidance of unwarranted disparity; and the need to provide restitution to any victims. 18 U.S.C. § 3553(a); see also United States v. Lowe, 632 F.3d 996, 998 (7th Cir. 2011). The statute's "overarching command" is to impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing. Kimbrough v. United States, 552 U.S. 85, 101 (2007).

3

**III.**

The memorandum from the probation office describes defendant's supervision adjustment as follows:

> Mr. Nelson has exhibited extraordinary compliance while on supervision. Throughout his period of probation, Mr. Nelson has maintained both full-time and part-time employment. Mr. Nelson works full-time third shift (11:00 p.m. - 7:00 a.m.) at Tekra Corporation as a Lead Operator; and part-time first shift (8:00 a.m. - 1:00 p.m.) at U-Haul as a Customer Service Representative. Mr. Nelson currently resides with his mother, Catherine Nelson, his girlfriend, Magdalena Krzecka, Ms. Krzecka's minor child from a previous relationship, and his uncle, David Koller. Mr. Nelson financially supports the household as Ms. Nelson and Ms. Krzecka are disabled and Mr. Koller is unemployed.
>
> Mr. Nelson has already completed 50 hours of community service with Hunger Task Force and continues to volunteer when available. He has satisfied his financial obligations and has submitted to a DNA sample as ordered. Mr. Nelson also successfully completed his period of home confinement without incident.
>
> To date, Mr. Nelson has not had any violations of his standard or special conditions.

(Memorandum at 1.)

The memorandum then recommends early discharge based on defendant's stable residence and employment status; his compliance with probation conditions; and the absence of any history of assaultive or predatory behavior. The memorandum further notes the absence of ongoing treatment needs or any identified safety issues related to victim(s) and/or the community based on completed risk assessments. Finally, the memorandum notes that the instant offense represented defendant's first contact with the criminal justice system, and that he has otherwise led a pro-social life. The report concludes that:

> Mr. Nelson works very hard to support his family, and has never allowed his hectic work schedule to interfere with his conditions of supervision, ensuring that all of his supervision obligations have been timely met. Further, the lifetime ban on firearms is highly punitive for Mr. Nelson who, prior to this offense, was a firearms enthusiast.

4

(Id. at 2.)

In its response, the government notes that several of the factors cited in the probation office's memorandum, including defendant's compliance, his employment, and his completion of community service, cannot be deemed exceptional, as the court expects no less. The memorandum also notes the lack of treatment needs or any history of assaultive or predatory behavior, but those circumstances, the government contends, cannot be characterized as new, unforeseen, or exceptional. The government accepts that defendant had done well on probation but counters that this "merely underscores the positive characteristics that the court identified at sentencing – he has again proven himself to be a hard worker, reliable in supporting those who depend upon him financially, and able to conform his behavior to the requirements of the law." (Govt.'s Resp. at 2.) The government also appears to accept that, given defendant's background and conduct on probation, a lengthy term of supervision is not needed to protect the public or specifically deter defendant. However, the government contends that there remains a need to deter generally and a need for the sentence to reflect the seriousness of the offense. The government argues that the five-year term of probation imposed did not unduly depreciate the seriousness of the offense or undermine respect for the law, but that a further reduction of that term would.

I appreciate the government's concerns but find that this is one of those rare cases in which early termination is warranted. First, while merely following the rules will not suffice, the report from the probation office appropriately characterizes defendant's compliance as "extraordinary." For instance, many probationers maintain employment, but this defendant holds down two jobs (full-time third shift and part-time first shift) in order to support his entire household, which includes disabled individuals; despite this hectic schedule, he has ensured

5

that all supervision obligations are met. Similarly, while the court expects completion of ordered community service, defendant has gone above and beyond. I directed him to perform at least ten hours of community service work annually over the five year term, for a total of fifty hours; he has completed the entire fifty hours in just two years and continues to volunteer with Hunger Task Force, despite his schedule.

Second, the § 3553(a) factors support early termination. As indicated above, the underlying offense was mitigated and defendant's character and background are otherwise quite positive. 18 U.S.C. § 3553(a)(1). The need to provide just punishment has been served by the felony conviction, two+ years of supervision, and completed six month period of home confinement. 18 U.S.C. § 3553(a)(2)(A). It is also worth noting, as the probation report does, that the firearms prohibition defendant now faces as a convicted felon is highly punitive to a firearms enthusiast. See United States v. Schuster, No. 01 CR. 67, 2002 WL 31098493 (S.D.N.Y. Sept. 19, 2002) (granting early termination of probation where the defendant completed a term of home confinement and suffered significant collateral consequences as a result of his conviction). For similar reasons, I cannot conclude that reducing the five year probationary term to twenty-six months would depreciate the seriousness of the offense or otherwise undermine any general deterrence possible in this case; the sentence served thus far, in conjunction with the significant collateral consequences of a federal felony conviction, will suffice to deter those tempted to create prohibited firearms. As the government concedes, given his demonstrated good conduct, continued supervision is not needed to protect the public from defendant or to specifically deter him from future crimes. 18 U.S.C. § 3553(a)(2)(B) & (C). Finally, defendant has no ongoing treatment or other rehabilitative needs, and he has satisfied all court-ordered financial obligations. 18 U.S.C. § 3553(a)(2)(D) & (a)(7).

6

**IV.**

**THEREFORE, IT IS ORDERED** that the request for early discharge of probation is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 16th day of August, 2012.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge